UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ELIZABETH WESTOVER,

        Plaintiff,

        v.                            Case No. 20-C-1347

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Elizabeth Westover's applications for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff argues that the Commissioner's decision should be reversed and remanded for further proceedings. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

### BACKGROUND

On March 1, 2018, Westover filed applications for a period of disability and disability insurance benefits and supplemental security income, alleging disability beginning May 31, 2016. She listed anxiety, depression, bipolar, migraines, seizures, and short-term memory loss as the conditions that limited her ability to work. R. 276. Following the denial of her applications initially and on reconsideration, Westover requested a hearing before an administrative law judge (ALJ). ALJ Wayne Ritter conducted a hearing on November 8, 2019. Westover, who was represented by counsel, and a vocational expert (VE) testified. R. 33–72.

At the time of the hearing, Westover was 33 years old. She lived in a house with her husband and two children. R. 54. Westover was in a motorcycle accident on Labor Day weekend in 2006. R. 45. She was not wearing a helmet and suffered a head injury. *Id.* At the time of the accident, Westover worked at UnitedHealthcare as a claims representative. R. 55–56. After the accident, she worked at Benefit Advantage as a receptionist in 2008 and 2009 and then at Cherry Tree Dental of Wausau as a scheduling coordinator. R. 56–57. She was terminated from her position at Cherry Tree Dental because she was not keeping up with her job duties. R. 57.

Westover testified that, years after the accident, she began suffering from epileptic seizures and severe migraine headaches. R. 46. She testified that, on average, she has a seizure once a week and migraines twice a week and that she takes medication for these conditions. R. 49, 52. She also has short term memory loss. R. 36. Westover had received mental health treatment since she was a teenager. R. 54. As to her activities of daily living, Westover does basic household chores, shops, and reads to her children. R. 54–55. She testified that her husband recently took over the checkbook after she forgot to pay the bills. R. 55. Westover indicated that she stopped driving six months before the hearing. *Id.*

In a fourteen-page decision dated December 23, 2019, the ALJ concluded that Westover was not under a disability within the meaning of the Social Security Act at any time through December 31, 2016, the date last insured. R. 14–27. The ALJ's decision followed the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled. The ALJ concluded Westover met the insured status requirements of the Social Security Act through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date. R. 16. The ALJ listed disorders of the back and neck, asthma, migraines, anxiety, depression, and attention-deficit hyperactivity disorder as Westover's severe

2

impairments. *Id.* He noted that, since sometime after the date last insured and as of the established onset date of disability, January 23, 2018, Westover has also had the additional severe impairment of complex partial epilepsy. R. 16–17. The ALJ noted that there was no evidence of significant seizure activity or of resulting functional limitations prior to January 23, 2018, when she was diagnosed with epileptic seizures and an electroencephalogram revealed findings consistent with focal seizure tendency in the left temporal region. R. 17. The ALJ determined that, since May 31, 2016, Westover has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After a review of the record, the ALJ determined that, prior to January 23, 2018, the date Westover became disabled, she had the residual functional capacity (RFC) to perform light work "except with only frequent stooping and no climbing of ladders, ropes, or scaffolds. She also must avoid more than moderate exposure to pulmonary irritants such as fumes, odors, dust, and gases and all exposure to unprotected heights, hazards, and the use of dangerous moving machinery. She was also limited to simple, routine, and repetitive tasks with no fast-paced work and only simple, work-related decisions." R. 19. Considering Westover's age, education, work experience, and RFC prior to January 23, 2018, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Westover could have performed, such as ticket seller, mail room clerk, and parking lot attendant. R. 25–26. But beginning on January 23, 2018, no jobs exist in the national economy that Westover can perform. R. 26. The ALJ concluded that Westover was not disabled prior to January 23, 2018, but became disabled on that date and has continued to be disabled through the date of the decision and that Westover was not under a disability within

the meaning of the Social Security Act at any time through December 31, 2016, the date last insured. R. 27.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not

intended to reverse the burden of proof.  In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work.  Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available.  Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Id.*  "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high."  *Id.*  Substantial evidence is "'more than a mere scintilla.'"  *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).  It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."  *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556

F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Westover raises numerous challenges to the ALJ's decision, but the Court finds only one need be addressed since it is enough, by itself, to require a remand. Westover asserts that the ALJ erred in considering her lack of treatment without first inquiring into the reasons for it. While an ALJ can consider a failure to seek medical treatment in evaluating credibility, the Seventh Circuit has held that an ALJ must not draw any inferences about a claimant's condition from her failure to seek treatment unless the ALJ has explored the claimant's explanations as to the lack of treatment, including an inability to afford medical care. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p.

In this case, despite repeatedly citing Westover's limited treatment history to discredit her statements regarding the severity of her symptoms, the ALJ did not indicate whether he considered

6

any reasons for her lack of treatment. The record suggests that Westover's financial difficulties may have played a part in her lack of treatment. For instance, the record reveals that Westover's husband lost his job, R. 411, 880; that she was having financial difficulties, R. 413, 880, 1077; and that she was going through bankruptcy, R. 397.

While an ALJ need not consider every piece of evidence in the record, he must not ignore entire lines of evidence in the record. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Given his emphasis on Westover's lack of treatment, the ALJ should have discussed whether Westover's ability to afford medical care served as a legitimate basis for her gaps in treatment. The ALJ's error in discrediting Westover's statements about the limiting effects of her symptoms is not harmless because a discussion of the factors related to Westover's lack of treatment may have impacted the ALJ's credibility determination. The ALJ failed to build an accurate and logical bridge from the evidence to his conclusion. Therefore, remand is warranted in this case. *See Ray v. Berryhill*, 915 F.3d 486, 490–91 (7th Cir. 2019) (noting that ALJs "may not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction"); *Shauger v. Astrue*, 975 F.3d 690, 696 (7th Cir. 2012) ("An ALJ may need to question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." (internal quotation marks and citation omitted)).

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently discuss the reasons for Westover's lack of treatment, the Commissioner should also address Westover's other claims of error, that the ALJ incorrectly

7

determined her onset date and that the ALJ lacked authority to act on this claim. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of December, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
